UNITED STATES OF AMERICA     *

       *

v.                       *      CRIMINAL NO. ABA-26-244

       *

ANTOINE BENJAMIN,       *

       *

Defendant.          *

       *

       *******

## GOVERNMENT'S DETENTION MEMORANDUM

The United States of America, by and through its undersigned attorneys, submits this Detention Memorandum in advance of Defendant Antoine Benjamin's detention hearing, scheduled for July 30, 2026.

## Introduction

The Court should order detention. The Defendant is charged with a drug trafficking conspiracy and possession with intent to distribute controlled substances in connection with the operation of multiple open-air drug markets where the Defendant and his associates sold narcotics, including fentanyl, heroin, and cocaine base ("crack" cocaine) in Baltimore, Maryland. Given the seriousness of the offense, the Defendant's criminal history, the danger posed by Defendant to the community, and the fact that committed the instant offenses while on federal supervised release, it is apparent that no condition or combination of conditions will reasonably assure the safety of the community.

## Factual and Procedural Background

The Defendant is a member of a drug trafficking organization ("DTO") that has been operating two street shops selling various drugs in Baltimore, Maryland. The street shops operated in 1800 block of North Carey Street (the "Carey Shop") and the 1800 block of Woodyear Street

(the "Woodyear Shop") and sold drugs both packaged for use and in an unpackaged "raw" form on a daily basis. Beginning in January 2026, confidential informants and undercover agents have conducted numerous controlled purchases from the DTO. The DTO's activities were also well-documented by camera surveillance, as shown in some of the example images below:



*From top to bottom: Codefendant Antonio Mason selling suspected narcotics to a customer at the Carey Shop.*

The Defendant was specifically responsible for a controlled purchase on March 26, 2026. Prior to the purchase, a confidential informant (the "CI") had been in contact with codefendant

Walter Epps, who had communicated the details of the time and location for the sale. The CI arrived to the area, where the defendant got in the back seat of the CI's car and sold the CI approximately 247 gel caps, which contained a mix of fentanyl and heroin (often referred to as "scramble" by street dealers). Epps was nearby during the interaction, and the Defendant conferred with him before and after the controlled purchase, as seen below.



*Epps (left) speaking with the Defendant (right) hours before the controlled purchase.*



*The Defendant (top) speaking with Epps (below) shortly after the controlled purchase.*

On July 22, 2026, a Grand Jury sitting in the District of Maryland returned an Indictment charging the Defendant with Conspiracy to Distribute and Possess with Intent to Distribute Controlled Substances, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(C) (Count One); and Distribution and Possession with Intent to Distribute Controlled Substances, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C) (Count Five);

On July 29, 2026, the Defendant had his initial appearance on the Indictment. The Government is seeking detention.

<u>**Argument**</u>

When there is probable cause to believe that a defendant committed an offense under the Controlled Substances Act that carries a maximum sentence of 10 years or more of imprisonment, "it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community." 18 U.S.C. § 3142(e)(3)(A). That presumption is subject to rebuttal by the defendant, which is a "limited burden of production" for the defendant to show he does not post a risk of flight or danger to the community. *United States v. Weddington*, Crim. No. RDB-19-597, 2020 WL 4569524, *2 (D. Md. Aug. 7, 2020) (quoting *United States v. Khusanov*, 731 F. App'x 19, 21 (2d Cir. 2018). However, the presumption in favor of detention is not eliminated once the defendant meets the burden of production; it becomes a factor to be considered in evaluating whether to detain the defendant. *Id.*

When seeking detention based on community safety or risk of flight, the Government's burden is to demonstrate the risk posed by the defendant by clear and convincing evidence. 18 U.S.C. § 1342(f)(2). When seeking a detention order, the Government may proceed by proffer of evidence. *See United States v. White*, Crim. No. PWG-13-436, 2015 WL 2374229, *2 (D. Md. May 15, 2015). In determining whether detention is warranted, 18 U.S.C. § 3142(g) directs the

4

Court to consider the following factors: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the defendant's history and characteristics; and (4) the nature and seriousness of the danger to the community that would be posed by the defendant's release.

Here, each of the Section 3142(g) factors weighs in favor of detention. There is clear and convincing evidence that no condition or combination of conditions can assure the Defendant's appearance or the safety of the community.

<u>Nature and Circumstances of the Offense</u>

The Defendant is charged with serious drug offenses that carry significant penalties, including up to 20 years imprisonment. The specific circumstances of the conduct underlying the offenses heighten their seriousness. Over the course of the conspiracy, the Defendant and his co-conspirators converted areas of residential streets in open-air drug markets to sell dangerous narcotics including fentanyl, heroin, and crack cocaine to a steady stream of customers in Baltimore. The Defendant's DTO not only sold drugs directly to customers for individual use, but also in larger distribution-level quantities to other potential sellers who could then go on to further distribute drugs in Maryland and beyond.

The nature of the offenses is serious enough that it creates a presumption in favor of detention. 18 U.S.C. § 3142(e)(3)(A). Even if the Defendant can meet his burden to produce any evidence suggesting he may not be a flight risk or danger to the community, that presumption remains a factor. Overall, the seriousness of the charged offenses weighs in favor of detention.

<u>Weight of the Evidence</u>

The Government's evidence is strong. The Defendant's conduct in connection with his DTO's street shop is clearly documented through surveillance and multiple controlled buys with

undercover investigators and confidential informants.  In addition to the controlled purchase described above, the pole camera evidence shows that the Defendant engaged in numerous hand-to-hand drug transactions and coordinated sales with other members of the DTO.  Further, the camera evidence demonstrates that the street shop had a steady flow of customers purchasing narcotics throughout the course of the conspiracy.

The evidence substantiating the types and quantities of drugs sold by the conspiracy is also strong.  The Baltimore Forensic Laboratory conducted analysis on the drugs seized from the DTO street shops.  These tests confirmed the weight of the drugs and revealed that the Defendant's DTO sold fentanyl, heroin, and crack cocaine, both on their own and in adulterated forms.  Accordingly, this factor weighs in favor of detention.

<u>History and Characteristics of the Defendant</u>

The Defendant has a long and concerning criminal history, with convictions dating back to 2011.  Those convictions include multiple drug- and firearm-related offenses.  More concerning for purposes of the instant detention hearing, the Defendant also violated his state-level probation.

Further, in 2018, the Defendant was convicted in this court of Possession of a Firearm and Ammunition by a Felon and sentenced to 10 years' incarceration. *United States v. Benjamin* (Case. No. 18-CR-235).  The Defendant was released from federal custody on February 10, 2026, roughly six weeks before he sold almost 250 gel caps of fentanyl to the CI in connection with Count Five of the Indictment.  The Defendant is currently on supervised release and has been the entire time that he has been working with his co-conspirators and other DTO members to sell drugs.  The Defendant's disdain for the court-ordered conditions of his supervised release is clear.  He will not respect any conditions of pretrial release that could be set in this matter.

The Defendant's history paints a clear picture of his ongoing criminal conduct and refusal to comply with court orders. Accordingly, this factor weighs strongly in favor of detention.

<u>Nature and Seriousness of the Danger to Any Person or the Community</u>

The drugs dispensed by the Defendant through his DTO's street shop present a serious danger to the community. The risks associated with fentanyl, heroin, and crack cocaine are well known to this Court. But of even greater concern are the lab test results related to the gel capsules sold by Defendant and his associates in the DTO, which showed that many of the gel caps obtained from controlled purchases—including the gel caps sold by the Defendant on March 26, 2026—contained a mixture of heroin and fentanyl. While each drug on its own poses a significant risk to the community, the combination poses an even more severe danger because mixing in even a tiny amount of fentanyl with heroin greatly increases the likelihood of a fatal overdose. *See* Center for Disease Control, *Fentanyl Facts*, CDC (Apr. 2, 2024), https://www.cdc.gov/stop-overdose/caring/fentanyl-facts.html.

Moreover, the Defendant sold these drugs on a regular basis to large number of users, and his DTO even sold the drugs in distribution quantities to others who could go on to further sell these substances and cause more damage to their community. Accordingly, the danger the Defendant poses to the community weighs in favor of detention.

In short, evaluation of each of the Section 3142(g) factors shows, by clear and convincing evidence, that the Defendant should be detained pending trial and the related hearing on his violation of supervised release.

## **<u>Conclusion</u>**

For the reasons stated above, and for any others presented at the detention hearing, there is no condition or combination of conditions that would reasonably assure the Defendant's

appearance for court proceedings or the safety of the community, and the Defendant should be detained pending trial.

Respectfully Submitted,

Kelly O. Hayes
United States Attorney

/s/
LaRai Everett
Alexander Levin
Assistant United States Attorneys